## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREEM MILLHOUSE,** | : | **CIVIL NO. 1:15-CV-1644** |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **CHARLES SAMUALS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The plaintiff, Kareem Millhouse, is a federal prisoner housed at the Special

Management Unit of the United States Penitentiary, Lewisburg. On August 25, 2015,

Millhouse filed a *pro se* complaint with this court. (Doc. 1.) Liberally construed, this

complaint lodged both general and specific claims that officials at the Lewisburg

Penitentiary were violating Millhouse' rights under the Eighth Amendment to the

United States Constitution to be free from cruel and unusual punishment.

As a general matter Millhouse alleged that the double celling of prisoners at

Lewisburg violated the plaintiff's constitutional rights since many incorrigible

1

inmates are housed at this institution, and double-celling compelled him to share a cell with such prisoners. (Id.) Beyond this general allegation relating to the conditions of his confinement, Millhouse made a more specific claim in the nature of a failure-to-protect claim. Specifically, Millhouse alleged that he had been twice housed with another dangerous inmate over his objections and then assaulted. (Id.)

With respect to this more specific allegation, Millhouse named one defendant, Unit Manager Smith, who he alleged was directly involved in the decision to house him over his protests with another, dangerous inmate, a decision which resulted in injuries for the plaintiff. (Id.) Millhouse then named a series of additional supervisory and institutional parties as defendants. These supervisory officials included the Director of the Bureau of Prisons, the Warden at Lewisburg, the prison officials responsible for Millhouse's designation to Lewisburg, as well as members of the United States Senate, who Millhouse alleges have failed in their congressional oversight responsibilities. None of these defendants are alleged to have played a direct role in the events which led to Millhouse's injuries. Rather, they are sued by Millhouse because of their supervisory or oversight roles, or because Millhouse perceives them as not have been sufficiently attentive to his past grievances. Millhouse also names two institutional defendants, the United States and the Federal Bureau of Prison, as defendants in this constitutional tort case. (Id.)

Having named these defendants, Millhouse seeks wide-ranging declaratory and injunctive relief, along with compensatory and punitive damage. Millhouse also asks for a novel form of relief in this civil case, the criminal prosecution of the defendants. (Id.)

Along with his complaint Millhouse has filed a motion for leave to proceed *in forma pauperis*. (Doc. 2 ) For the reasons set forth below, we will grant Millhouse leave to proceed *in forma pauperis* in this case, but as part of our legally-mandated screening review we find that, with the exception of his failure to protect claim lodged against defendant Smith, the plaintiff has failed to state a claim upon which relief may be granted. Therefore, we recommend that the Court dismiss all of the claims and defendants named the complaint, with the exception of the failure to protect claim lodged against defendant Smith.

## II. Discussion

### A. Screening of *Pro Se* Complaints–Standard of Review

This court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

**(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards

4

have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as

true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct. This fundamental requirement is driven both by matters of principle, and by pragmatic considerations. As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to properly assign individual responsibility to a particular defendant without some factual description of what has transpired. Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint). Further, in order to satisfy the strictures of Rule 8, a complaint must also contain a coherent prayer for relief, demanding relief from a defendant that lies within

the power of the defendant to provide. See Klein v. Pike Cnty. Comm'rs, CIV.A. 11-278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels dismissal); Snyder v. Snyder, 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan. 24, 2012) report and recommendation adopted, 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).

Applying these legal benchmarks, for the reasons set forth below, we conclude that, with the exception of the failure to protect claim lodged against defendant Smith,[1] this complaint is fatally flawed and should, therefore, be dismissed. These separate and independent flaws in this pleading are addressed below.

---

[1]Failure to protect claims are judged against exacting standards and it is clear that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See, e.g, Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005). Instead, in order to show deliberate indifference in this fashion, a plaintiff would need to come forward with evidence showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information that presented a substantial risk to inmate safety. As the Supreme Court has observed in this context: "If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was *longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,* and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk *and thus must have known about it*, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk." Farmer, 511 U.S. at 842-43 (emphasis added). Here, we do not express an ultimate opinion on the merits of this claim. We simply note that Millhouse has alleged sufficient facts to allow the complaint to be served on defendant Smith.

### B.    Many of Millhouse's Claims Fail to State Claims Upon Which Relief May Be Granted

#### 1.    This Court May Not Order a Criminal Indictment As Relief in a Civil Lawsuit

At the outset, in this complaint the plaintiff asks this court to file a criminal indictment against his jailers. This we may not do. It is well established that decisions regarding the filing of criminal charges are the prerogative of the executive branch of government, are consigned to the sound discretion of prosecutors, and under the separation of powers doctrine are not subject to judicial fiat. Indeed, it has long been recognized that the exercise of prosecutorial discretion is a matter, "particularly ill-suited to judicial review." Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). Recognizing this fact, courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties, finding that civil plaintiffs lack standing to make such claims and concluding that such relief simply is unavailable in a civil lawsuit. See, e.g., Ostrowski v. Mehltretter, 20 Fed. Appx. 87, 90 (2d Cir.2001) (stating that "Ostrowski has no standing to sue for any of Mehltretter's actions. First of all, he has not shown, injury-in-fact. The failure of Mehltretter to investigate or prosecute Bybel did not injure him in any direct manner-he has no 'personal stake in the outcome' of a perjury case brought against (or not

brought against) another person ."); See also Kim v. Romero, 877 F.2d 64, 1989 WL 67116 at *1 (9th Cir. June 14, 1989) (affirming the dismissal of a suit against various prosecuting authorities for their failure to bring charges against a sheriff for alleged battery); McMinn v. Damiani, 765 F.2d 145, 1985 WL 13323 (6th Cir. May 3, 1985) (affirming the dismissal for lack of standing a pro se civil rights case where plaintiff had sued state prosecuting authorities for failing to investigate or prosecute claims against various state judges and lawyers); Gessner v. Dep't of Corr., 3:14-CV-111, 2014 WL 972290 (M.D. Pa. Mar. 12, 2014); Snyder v. Aaron, CIV.A. 05–1602, 2006 WL 544466 (W.D.Pa. Mar.6, 2006); Mover v. Borough of North Wales, Civ. No. 00–1092, 2000 WL 1665132 at *2 (E.D.Pa.Nov.7, 2000) (stating that "Moyer has no judicially cognizable interest in Timothy Conley's criminal prosecution. Accordingly, an agreement to refrain from prosecuting Conley for sexual assault or to charge him with disorderly conduct or the act thereof violates no constitutional right that Moyer has standing to assert."); see also Wise v. Augustine, Civ. No. 97–2651, 1997 WL 534695 at *2 (E.D.Pa. Aug.8, 1997) (stating that "[a] private citizen has no constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime."); Dundore v. O'Donnell, Civ. No. 85–2907, 1985 WL 2681 at *2 (E.D.Pa. Sept.17, 1985) (stating that "Defendant O'Donnell is alleged to have refused to file the criminal charges brought by plaintiffs. Although plaintiffs

were no doubt aggrieved when O'Donnell refused to file the charges, they have no constitutional right that I am aware of to have criminal charges filed."); Corbin v. Stevens, Civ. No. 91–1054, 1992 WL 96684 at *2 (S.D.N.Y. April 30, 1992) (stating that "[p]laintiff possesses no constitutional right to have someone arrested...."). Therefore, this claim also fails as a matter of law and should be dismissed.

## 2. Millhouse's Double-Celling Complaints Fail

Furthermore, to the extent that Millhouse alleges that the double-celling of inmate at the Lewisburg Penitentiary constitutes a *per se* violation of the Eighth Amendment, this pleading also fails to state a claim upon which relief may be granted. Such claims must meet exacting legal standards. The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials. U.S. Const. amend. VIII; Farmer v. Brennan, 511 U.S. 825 (1994). The Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To allege a viable Eighth Amendment claim based on the conditions of confinement, an inmate must allege (1) a deprivation that is sufficiently serious and (2) that the defendant was deliberately indifferent to the deprivation. Young v. Quinlan, 960 F.2d 351, 359-60 (3d Cir.

1992). Moreover, conditions of confinement will violate the Eighth Amendment if the deprivation is sufficiently serious, which the Supreme Court has held means that the inmate has been denied "the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. In addition, for an Eighth Amendment claim to lie, prison officials must have acted with deliberate indifference to the health or safety of the inmate, meaning that the prison officials acted with recklessness. Id. at 834-35; Wilson v. Seiter, 501 U.S. 294, 303 (1991). Thus, in order to find an Eighth Amendment violation with respect to conditions of confinement, the plaintiff ultimately must present evidence showing that the prison officials were "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. As Judge Rambo of this court has summarized:

> The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space and the need for some degree of ventilation and fresh air.

Mitchell v. Dodrill, 696 F. Supp. 2d 454, 466 (M.D. Pa. 2010) (citing Helling v. McKinney, 509 U.S. 25, 32 (1993)).

At the same time, it is clear that "the Constitution 'does not mandate comfortable prisons.'" Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting

Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).  Instead, in order to establish an

Eighth Amendment claim, a plaintiff must show that he has been deprived of "the

minimal civilized measure of life's necessities."  Griffin v. Vaughn, 112 F.3d 703,

709 (3d Cir. 1997) (quoting Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1991)).

This includes showing that the conditions of confinement pose "a substantial risk of

serious harm" to an inmate's health or safety.  Farmer, 511 U.S. at 834.  In

considering such claims, courts emphasize the duration of the complainant's exposure

to the allegedly unconstitutional conditions and the "totality of the circumstances" as

critical to a finding of cruel and inhumane treatment.  Rhodes, 452 U.S. at 362-63.

Furthermore, "[w]hen an Eighth Amendment claim arises in the context of a

challenge to conditions of confinement, we must determine if prison officials acted

with 'deliberate indifference' to the inmate's health.  Farmer v. Brennan, 511 U.S.

825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The objective inquiry is whether

the inmate was 'denied the minimal civilized measure of life's necessities.'  Hudson,

503 U.S. at 9, 112 S.Ct. 995."  Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000).

In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with
> "evolving standards of decency that mark the progress of a maturing
> society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d
> 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2
> L.Ed.2d 630 (1958)).  Conditions of prison confinement violate the
> Eighth Amendment only if they "deprive inmates of the minimal

civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

Thus, these claims also require proof of a both culpable state of mind, and objective proof of physical conditions of confinement which shock the conscience and depart from minimal civilized standards of life's necessities.

Judged against these benchmarks, courts have held on a number of occasions that the environmental conditions at the Lewisburg Penitentiary are not sufficiently severe, protracted, or harmful to constitute cruel and unusual punishment and rise to the level of a violation of the Eighth Amendment to the United States Constitution. See e.g., Kates v. USP Lewisburg Warden, 547 F. App'x 93 (2013); Mitchell v. Dodrill, 696 F.Supp. 2d. 454, 467 (M.D. Pa. 2010). In particular, courts have repeatedly held that prisoners at this facility are not entitled as a matter of right to enjoy single-cell housing in that facility. Indeed, similar assertions have been flatly rejected by this court. In Harrison v. Bledsoe, No. 09-1600, 2010 WL 186804 (M.D. Pa. Jan. 13, 2010), this court was presented with a claim by a Lewisburg SMU inmate that conditions at the SMU amounted to cruel and unusual punishment in violation of the Eighth Amendment. In terms that are equally applicable here, the court rejected that claim holding instead that:

Eighth Amendment claims must satisfy both an objective component (the deprivation must be sufficiently serious) and a subjective component (the defendant must have been deliberately indifferent). Young v. Quinlan, 960 F.2d 351, 359-60 (3d Cir.1992). As to the objective component, the Eighth Amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981). As to the subjective component, the question is whether the prison official acted with deliberate indifference to the inmate's health or safety. Hudson v. McMillian, 503 U.S. 1, 8,(1992). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). Double celling inmates is not *per se* unconstitutional. Rhodes, supra, 452 U.S. at 352. Doubling celling may, however, amount to cruel and unusual punishment if combined with other adverse conditions. Nami v. Fauver, 82 F.3d 63, 67 (3d Cir.1996). Considerations that are relevant in determining if double celling violates the Eighth Amendment "include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such a plumbing, ventilation, and showers." Id. The plaintiff alleges that he has been in the SMU since June of 2008, that he is double celled for twenty-three hours a day and that such double celling leads to tension and stress. The plaintiff, however, has not alleged the size of his cell in the SMU, and, apart from alleging that the temperature in the cells is higher than outside temperatures, he has not alleged the physical condition of his cell in the SMU. The plaintiff alleges generally that the inmates in the SMU are violent and that double celling leads to tension. However, he has not alleged that he suffered a substantial injury from another inmate or facts from which it can reasonably be inferred that he is in imminent danger of substantial injury as a result of being double celled. The plaintiff's allegations regarding the conditions of the SMU, even when combined with the other alleged restrictions imposed on inmates in the SMU, do not raise a plausible inference that the plaintiff was denied the minimal civilized measure of life's necessities or that the

defendants acted with deliberate indifference to his health or safety. Accordingly, the amended complaint fails to state an Eighth Amendment claim upon which relief may be granted.

Harrison v. Bledsoe , No. 09-1600, 2010 WL 186804, *5-6 (M.D.Pa. Jan 13, 2010).

Similarly, in Mitchell v. Dodrill, 696 F. Supp. 2d. 454 (M.D. Pa. 2010) this court expressly rejected a claim by a Lewisburg SMU inmate that double-celling prisoners in this facility violated the Eighth Amendment, stating that:

It is well-settled that double celling inmates is not *per se* unconstitutional. Rhodes, 452 U.S. at 348. See also Harrison v. Bledsoe, Civ. No. 1:09-cv-01600, 2010 WL 186804, at *6 (M.D.Pa. Jan. 13, 2010) (finding no Eighth Amendment claim where the plaintiff alleges he is double-celled for twenty-three hours a day in SMU and that such double-celling leads to tension and stress); Henry v. Wilson, Civ. No. 2:05-cv-648, 2007 WL 2746717, at *5 (W.D.Pa. Sept. 17, 2007) (denying Eighth Amendment claim where the plaintiff fails to produce any evidence that his conditions in a double cell deprived him of any basic human need). Double celling may, however, amount to cruel and unusual punishment if combined with other adverse conditions. Nami v. Fauver, 82 F.3d 63, 67 (3d Cir.1996). Considerations that are relevant in determining if double celling violates the Eighth Amendment "include the length of confinement, the amount of time prisoners spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers." Id. Here, [plaintiff] alleges that he has been forced to live in a cell that is too small for two inmates. However, he does not allege that he was singled out for the double-celling or that his health or life is or was endangered by the condition. Further, he has not shown that he suffered a substantial injury from another inmate or facts from which it can be reasonably inferred that he is in imminent danger of substantial injury as a result of being double celled. Since the court has already determined that the other conditions complained of do not deprive

[plaintiff] of "the minimal civilized measure of life's necessities," <u>Griffin v. Vaughn</u>, 112 F.3d at 709, nor indicate that prison officials "knew of and disregarded an excessive risk to [Mitchell's] health or safety," <u>Farmer</u>, 511 U.S. at 837, [plaintiff's] disappointment here with the double-celling practice in the SMU does not amount to cruel and unusual punishment.

<u>Mitchell v. Dodrill</u>, 696 F.Supp.2d 454, 468-469 (M.D.Pa. 2010). <u>See also, Hunter v. Bledsoe</u>, No. 10-927, 2010 WL 3154963 (M.D. Pa. Aug. 9, 2010)(held SMU inmate has no constitutional right to single-cell status). In light of this settled case law, Millhouse's claims which appear to be premised on the idea that this double-celling practice is inherently unconstitutional fail as a matter of law.

### 3. Millhouse May Not Maintain Bivens Constitutional Tort Claims Against the United States or the Federal Bureau of Prisons

Furthermore, the plaintiff may not maintain a <u>Bivens</u> constitutional tort claim against the United States or the Federal Bureau of Prisons as institutional defendants. <u>Bivens</u> constitutional tort lawsuits can only be lodged against individual government officials, and may not be brought against the United States as an institutional defendant. Rather, it is well-settled that <u>Bivens</u> actions against the United States—and, by extension, against federal agencies or officials sued in their official capacity—are barred by sovereign immunity, absent an explicit waiver of that immunity. <u>FDIC v. Meyer</u>, 510 U.S. 471, 483, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); <u>Huberty v. United States Ambassador to Costa Rica</u>, 316 F. App'x 120 (3d

Cir. Aug.21, 2008); <u>Douglas v. United States</u>, 285 F. App'x 955 (3d Cir.2008); <u>Jaffee v. United States</u>, 592 F.2d 712, 717 (3d Cir.1979); <u>Bell v. Rossott</u>, 227 F.Supp.2d 315, 320 (M.D.Pa.2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States). Therefore, a <u>Bivens</u> action cannot be brought against the United States, or a federal agency, since such claims are plainly barred by the doctrine of sovereign immunity, and Millhouse's <u>Bivens</u> claims against the United States and the Federal Bureau of Prisons should be dismissed. <u>See</u> <u>Mack v. United States</u>, No. 1:13-CV-280, 2013 WL 785058, at *5 (M.D. Pa. Feb. 6, 2013) <u>report and recommendation adopted</u>, No. 1:13-CV-280, 2013 WL 784906 (M.D. Pa. Mar. 1, 2013).

### 4. Millhouse's Supervisory Liability Claims Fail

In this case Millhouse has also named a number of supervisory defendants in his complaint. These supervisory officials included the Director of the Bureau of Prisons, the Warden at Lewisburg, the prison officials responsible for Millhouse's designation to Lewisburg, as well as members of the United States Senate, who Millhouse alleges have failed in their congressional oversight responsibilities. None of these defendants are alleged to have played a direct role in the events which led to Millhouse's injuries. Rather, they are sued by Millhouse because of their supervisory

or oversight roles, or because Millhouse perceives them as not have been sufficiently attentive to his past grievances.

While Millhouse has named these officials as defendants he has not alleged sufficient facts to give rise to supervisory liability against these officials. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that prison supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be

predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa.

2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*. <u>See Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)." <u>Jetter v. Beard</u>, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, in many instances the plaintiff does little more than name a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about these defendants in the body of this pleading. To the extent that the plaintiff simply premises the liability of these defendants upon their supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. <u>Hudson v. City of McKeesport</u>, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Furthermore, to the extent that these supervisory liability claims rest on the premise that officials did not after-the-fact act favorably upon his past grievances, this claim also fails. An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a

prison grievance system.  Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim.  See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).  See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").  As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system.  The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

24

<u>Pressley v. Beard</u>, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. <u>See</u> <u>Inmates of Attica Corr. Facility v. Rockefeller</u>, 477 F.2d 375, 382 (2d Cir.1973)." <u>Paluch v. Sec'y Pennsylvania Dept. Corr.</u>, 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, as presently drafted, the plaintiff's claims against these supervisory defendants consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with the processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case.

Finally, we recognize that *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the plaintiff has not alleged facts that would state a claim upon which relief may be granted, and it appears that he may be unable to do so. Nonetheless, out of an abundance of caution, and in order to preserve the plaintiff's rights, it is recommended that this

matter be dismissed without prejudice to the plaintiff attempting to amend this federal complaint to state a claim upon which relief may be granted in federal court, by including proper allegations that meet the requirements of federal law.

### III.    Recommendation

Accordingly, for the foregoing reasons, we will GRANT Millhouse leave to proceed *in forma pauperis* in this case, (Doc. 2.), but IT IS RECOMMENDED that the court dismiss all of the claims and defendants named the complaint, with the exception of the failure to protect claim lodged against defendant Smith the plaintiff's complaint, for failure to state a claim upon which relief can be granted, but that the dismissal of this action be without prejudice to any effort by the plaintiff to timely allege facts in an amended complaint which might state a claim upon which relief may be granted, provided that the plaintiff acts within 20 days of any dismissal order.

The plaintiff is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 27th day of August 2015.

***<u>S/Martin C. Carlson</u>***
Martin C. Carlson
United States Magistrate Judge