**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREEM MILLHOUSE,** | : | **CIVIL NO. 1:15-CV-1644** |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **CHARLES SAMUALS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case

The plaintiff, Kareem Millhouse, is a federal prisoner housed at the Special Management Unit of the United States Penitentiary, Lewisburg. On August 25, 2015, Millhouse filed a *pro se* complaint with this Court. (Doc. 1.) Liberally construed, this complaint lodged both general and specific claims that officials at the Lewisburg Penitentiary were violating Millhouse' rights under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.

As a general matter Millhouse alleged that the double celling of prisoners at Lewisburg violated the plaintiff's constitutional rights since many incorrigible inmates are housed at this institution, and double-celling compelled him to share a cell with such prisoners. (Id.) Beyond this general allegation relating to the conditions of his confinement, Millhouse made a more specific claim in the nature of a failure-to-

protect claim. Specifically, Millhouse alleged that he had been twice housed with another dangerous inmate over his objections and then assaulted. (Id.)

Many of the allegations and parties identified in Millhouse's initial complaint have been dismissed by the Court upon a screening review of this complaint. Only one claim now remains, and that claim is the subject of a pending motion to dismiss. Thus, Millhouse has prevailed on none of his claims and currently has failed on many of the allegations set forth in the complaint.

It is against this backdrop of failed claims and halting litigation that this matter comes before the Court for consideration of a motion for preliminary injunctive relief filed by the plaintiff. (Doc. 14.) In this motion, Millhouse alleges that he has been identified as a "rat" in November of 2015, and as a result faced potential threats and reprisal. (Id.) Millhouse sought extraordinary relief in the form of an order directing single cell housing for this prisoner on X block of the prison. (Id.) This relief closely paralleled the relief pursued by Millhouse in a companion case, Millhouse v. Heath, 1:15-CV-1400, where Millhouse also sought a preliminary injunction directing that he be "cell[ed] alone on [the] X-block or on [the] X-block . . . ," until such time as he can be transferred to another institution. (Doc. 6, at 2.) That nearly identical motion for preliminary injunction was denied by this Court, and for the reasons set forth

below, it is submitted that this motion for preliminary injunction should also be denied.

## II.  Discussion

### A.  Preliminary Injunction Rule 65– The Legal Standard

Inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)).  See also Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir. 2001); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006)(denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right.  Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982) (affirming denial of prisoner motion

for preliminary injunction seeking greater access to legal materials). It is an extraordinary remedy. Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.' " Emile, 2006 WL 2773261, at * 6 (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F .2d 86, 91 (3d Cir.1992)). Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53, 520 F.2d 1220, 1230 (6th Cir.1975), cert. denied, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir.1937).

Emile, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Fed.R.Civ.P. 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998);

Kershner, 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute. Specifically, 18 U.S.C. §3626 limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are also instructed that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary

> relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

Furthermore, several other basic legal tenets guide our discretion in this particular case, where an inmate: (1) seeks to enjoin a wide array of non-parties; and (2) requests relief which goes beyond merely preserving the *status quo* in this litigation, but seeks to impose new, mandatory conditions on prison officials. Each of these aspects of this prayer for injunctive relief presents separate problems and concerns.

For example, an injunction against non-parties, like the injunction sought here, requires a specific legal showing. To the extent that Millhouse seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996).

Further, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but...at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980).

Mandatory injunctions should be used sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Thus, a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518 (3d Cir. 1995). In addition, to the extent that the plaintiff seeks a preliminary injunction with some enduring effect, he must show that he will be irreparably injured by the denial of this extraordinary relief. With respect to this benchmark standard for a preliminary injunction, in this context it is clear that:

> Irreparable injury is established by showing that plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the plaintiff must show *immediate* irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).

Messner, 2009 WL 1406986, at *4.

Furthermore, it is well-settled that "[t]he purpose of a preliminary injunction is to preserve the *status quo*, not to decide the issues on their merits." Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997). Therefore, in a case such as this, where the inmate-"plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [the] plaintiff cannot demonstrate that [s]he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this Court, upon consideration of defendants' motion to dismiss, or at trial. As a result, plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5.

In assessing a motion for preliminary injunction, the Court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d at 443. Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir. 2001)).

**B.    This Request For Injunctive Relief Should Be Denied**

Judged against these exacting standards, in its current form, this motion for injunctive relief fails. At the outset, this motion appears to attempt to re-litigate a

matter which has previously been resolved by the federal courts. Specifically, this motion seeks to re-litigate a claim brought in a companion case, Millhouse v. Heath, 1:15-CV-1400, where Millhouse also sought a preliminary injunction directing that he be "cell[ed] alone on [the] X-block or on [the] X-block . . . ," until such time as he can be transferred to another institution. (Doc. 6, at 2.)

"We have the authority to apply the doctrine of claim preclusion or *res judicata sua sponte*. Gleash v. Yuswak, 308 F.3d 758, 760 (7th Cir.2002); Ezekoye v. Ocwen Federal Bank FSB, 179 F.App'x 111, 114 (3d Cir.2006) (non precedential), [and] can . . . invoke *res judicata* 'if it is so plain from the language of the complaint and other documents in the district court's files that it renders the suit frivolous.' Gleash, 308 F.3d at 760." Guider v. Mauer, CIVIL 1:CV-09-1915, 2009 WL 4015568 (M.D. Pa. Nov. 19, 2009). In our view, upon a preliminary screening review of this motion, the *res judicata*, collateral estoppel and issue preclusion doctrines apply and compel dismissal of these previously litigated and identical claims that were made by the plaintiff in a related case, Millhouse v. Heath, 1:15-CV-1400.

Collateral estoppel, *res judicata* and issue preclusion are doctrines which play a vital role in litigation. It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' Gregory v.

Chehi, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)." Electro-Miniatures Corp. v. Wendon Co., Inc., 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted). The parameters of this doctrine, which precludes re-litigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated. Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that, with respect to the claims made in the instant motion for preliminary injunction the legal requisites for issue preclusion are fully satisfied, since: " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). Therefore, as a

threshold matter, consideration of this motion is barred by the issue preclusion doctrine, and the motion should be dismissed.

In any event these claims fail on their merits when viewed against the standards governing preliminary injunctions. In the past inmates have frequently sought preliminary injunctive relief similar to that demanded here, compelling prison officials to provide them with specific accommodations and services during the pendency of a lawsuit. Yet, such requests, while often made, are rarely embraced by the courts. Instead, courts have routinely held that prisoner-plaintiffs are not entitled to use a motion for injunctive relief as a vehicle to compel prison officials to provide them with specific relief and services pending completion of their lawsuits. Thus, courts have rejected inmate requests for injunctions mandating specific treatment and conditions of confinement for prisoners. See, e.g., Messner v. Bunner, No. 07-112E, 2009 WL 1406986 (W.D.Pa. May 19, 2009)(denying inmate preliminary injunction); Brown v. Sobina, No. 08-128E, 2008 WL 4500482 (W.D.Pa. Oct. 7, 2008)(denying inmate preliminary injunction); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006) (denying inmate preliminary injunction).

In particular, Millhouse cannot show an entitlement to any equitable relief compelling prison officials to give him favorable single cell housing treatment within the Lewisburg Penitentiary Special Management Unit. Courts have repeatedly held

that prisoners at this facility are not entitled as a matter of right to enjoin the general housing conditions in that facility. Indeed, similar assertions have been flatly rejected by this Court. In Harrison v. Bledsoe, No. 09-1600, 2010 WL 186804 (M.D. Pa. Jan. 13, 2010), this Court was presented with a claim by a Lewisburg SMU inmate that conditions at the SMU amounted to cruel and unusual punishment in violation of the Eighth Amendment. In terms that are equally applicable here, the Court rejected that claim holding instead that:

> Eighth Amendment claims must satisfy both an objective component (the deprivation must be sufficiently serious) and a subjective component (the defendant must have been deliberately indifferent). Young v. Quinlan, 960 F.2d 351, 359-60 (3d Cir.1992). As to the objective component, the Eighth Amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981). As to the subjective component, the question is whether the prison official acted with deliberate indifference to the inmate's health or safety. Hudson v. McMillian, 503 U.S. 1, 8,(1992). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). Double celling inmates is not *per se* unconstitutional. Rhodes, supra, 452 U.S. at 352. Doubling celling may, however, amount to cruel and unusual punishment if combined with other adverse conditions. Nami v. Fauver, 82 F.3d 63, 67 (3d Cir.1996). Considerations that are relevant in determining if double celling violates the Eighth Amendment "include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such a plumbing, ventilation, and

> showers." Id. The plaintiff alleges that he has been in the SMU since June of 2008, that he is double celled for twenty-three hours a day and that such double celling leads to tension and stress. The plaintiff, however, has not alleged the size of his cell in the SMU, and, apart from alleging that the temperature in the cells is higher than outside temperatures, he has not alleged the physical condition of his cell in the SMU. The plaintiff alleges generally that the inmates in the SMU are violent and that double celling leads to tension. However, he has not alleged that he suffered a substantial injury from another inmate or facts from which it can reasonably be inferred that he is in imminent danger of substantial injury as a result of being double celled. The plaintiff's allegations regarding the conditions of the SMU, even when combined with the other alleged restrictions imposed on inmates in the SMU, do not raise a plausible inference that the plaintiff was denied the minimal civilized measure of life's necessities or that the defendants acted with deliberate indifference to his health or safety. Accordingly, the amended complaint fails to state an Eighth Amendment claim upon which relief may be granted.

Harrison v. Bledsoe , No. 09-1600, 2010 WL 186804, *5-6 (M.D.Pa. Jan 13, 2010).

Similarly, in Mitchell v. Dodrill, 696 F. Supp. 2d. 454 (M.D. Pa. 2010) this Court expressly rejected a claim by a Lewisburg SMU inmate that double-celling prisoners in this facility violated the Eighth Amendment, stating that:

> It is well-settled that double celling inmates is not *per se* unconstitutional. Rhodes, 452 U.S. at 348. See also Harrison v. Bledsoe, Civ. No. 1:09-cv-01600, 2010 WL 186804, at *6 (M.D.Pa. Jan. 13, 2010) (finding no Eighth Amendment claim where the plaintiff alleges he is double-celled for twenty-three hours a day in SMU and that such double-celling leads to tension and stress); Henry v. Wilson, Civ. No. 2:05-cv-648, 2007 WL 2746717, at *5 (W.D.Pa. Sept. 17, 2007) (denying Eighth Amendment claim where the plaintiff fails to produce any evidence that his conditions in a double cell deprived him of any basic human need). Double celling may, however, amount to cruel and unusual punishment

> if combined with other adverse conditions. Nami v. Fauver, 82 F.3d 63, 67 (3d Cir.1996). Considerations that are relevant in determining if double celling violates the Eighth Amendment "include the length of confinement, the amount of time prisoners spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers." Id. Here, [plaintiff] alleges that he has been forced to live in a cell that is too small for two inmates. However, he does not allege that he was singled out for the double-celling or that his health or life is or was endangered by the condition. Further, he has not shown that he suffered a substantial injury from another inmate or facts from which it can be reasonably inferred that he is in imminent danger of substantial injury as a result of being double celled. Since the court has already determined that the other conditions complained of do not deprive [plaintiff] of "the minimal civilized measure of life's necessities," Griffin v. Vaughn, 112 F.3d at 709, nor indicate that prison officials "knew of and disregarded an excessive risk to [Mitchell's] health or safety," Farmer, 511 U.S. at 837, [plaintiff's] disappointment here with the double-celling practice in the SMU does not amount to cruel and unusual punishment.

Mitchell v. Dodrill, 696 F.Supp.2d 454, 468 -469 (M.D.Pa. 2010). See also, Hunter v. Bledsoe, No. 10-927, 2010 WL 3154963 (M.D. Pa. Aug. 9, 2010)(held SMU inmate has no constitutional right to single-cell status). Thus, Millhouse's requests for injunctive relief enjoining the overall living conditions at this facility fail because he cannot meet the first requirement for such relief; he cannot "actually succeed[] on the merits of [his Eighth Amendment] claim." Chao v. Rothermel, 327 F.3d 223, 228 (3d Cir. 2003)(citation omitted.)

Beyond this failure to demonstrate a likelihood of success on the merits of these various claims, this motion for injunctive relief is wanting in several other respects. For example, the motion does not address the demanding standards prescribed by caselaw and statute for such injunctions, in that the plaintiff does not present a prayer for relief which is "narrowly drawn, extend[s] no further than necessary to correct the harm . . ., and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). Quite the contrary, this prayer for relief is cast broadly and would invite the Court to intervene in prison custody issues in a particularly intrusive and inappropriate. Nor does the motion explain whether, and to what extent, administrative relief has been sought, and exhausted, with respect to these matters. The failure to address these important procedural matters has substantive significance to the extent that he seeks a permanent injunction of some sort from the Court, and strongly caution against granting the plaintiff this extraordinary form of relief. Ghana v. Holland, 226 F.3d 175 (3d Cir. 2000).

Moreover, while we do not in any way diminish these complaints, we find that this inmate has not shown an immediate irreparable harm justifying a preliminary injunction. See e.g., Rivera v. Pennsylvania Dep't. Of Corrections, 346 F. App'x 749 (3d Cir. 2009)(denying inmate request for injunction); Rush v. Correctional Medical Services, Inc.., 287 F. App'x 142 (3d Cir. 2008)(same). In this regard, we note that

Millhouse's motion complains about matters that are alleged to have occurred in November 215, some six months ago. These dated episodes simply do not describe an imminent threat of harm to the plaintiff. Further, when considering this benchmark standard for a preliminary injunction, it is clear that: "Irreparable injury is established by showing that plaintiff will suffer harm that 'cannot be redressed by a legal or an equitable remedy following trial.' Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ('The preliminary injunction must be the only way of protecting the plaintiff from harm')." Messner, 2009 WL 1406986, at *4 . In this context, the word irreparable has a specific meaning and connotes "that which cannot be repaired, retrieved, put down again, [or] atoned for ...." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Thus, an injunction will not issue "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted). Therefore, where an inmate-plaintiff is alleging that damages may be an adequate remedy, a preliminary injunction is often not appropriate since the inmate has not shown that he faces immediate, *irreparable* harm. Rivera v. Pennsylvania Dep't. Of Corrections, 346 F.App'x 749 (3d Cir. 2009); Rush v. Correctional Medical Services, Inc., 287 F.App'x 142 (3d Cir. 2008).

Applying these legal standards in a case such as this, where the inmate- "plaintiff's request for immediate relief in his motion for preliminary injunction

necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [the] plaintiff cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this Court, upon consideration of defendants' motion to dismiss, or at trial. As a result, plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5. In this case, as we view it, much of the injunctive relief sought by Millhouse directly relates to the merits of the ultimate issues in this lawsuit. Since the ultimate issues in this lawsuit are inextricably intertwined with the assertions in this motion for injunctive relief, a ruling on the motion might be perceived as speaking in some way to the ultimate issues in this case. In such instances we should refrain from prematurely granting such relief.

Further, we note that granting this injunctive relief, which would effectively have the federal courts making *ad hoc*, and individual, decisions concerning the treatment of a single prisoner, could harm both the defendants' and the public's interest. In this prison context, the defendants' interests and the public's interest in penological order could be adversely effected if the Court began dictating the treatment for the plaintiff, one inmate out of thousands in the federal prison system. Therefore, consideration of "whether granting preliminary relief will result in even greater harm to the nonmoving party; and . . . whether granting the preliminary relief

will be in the public interest," Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994), also weighs heavily against Millhouse in this case.

In sum, in this case Millhouse has not demonstrated a likelihood of success on the merits, and has not shown that he suffers an irreparable harm. Moreover, this motion is procedurally flawed, and granting this extraordinary relief could harm the public's interest and the interests of the opposing parties. Therefore, an assessment of the factors which govern issuance of such relief under Rule 65 of the Federal Rules of Civil Procedure weighs against Millhouse and compels us to recommend that the Court deny this motion.

**III. Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for a temporary restraining order pursuant to FRCP 65(b) (Doc. 14.) be denied.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the

basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of April 2016.

                                        ***S/Martin C. Carlson***
                                        Martin C. Carlson
                                        United States Magistrate Judge